ORIGINAL

1  JOHN H. COTTON & ASSOCIATES, LTD.
   JOHN H. COTTON, SBN 5268
2  CHRISTOPHER G. RIGLER, SBN 10730
   2300 West Sahara #420
3  Las Vegas, NV 89102
   Telephone: (702) 367-9993
4  Facsimile: (702) 367-9977
   jhcotton@jhcottonlaw.com
5  crigler@jhcottonlaw.com

6  Attorneys for Defendants,
   AETNA HEALTH & LIFE INSURANCE COMPANY,
7  AETNA HEALTH INSURANCE COMPANY
   AETNA LIFE INSURANCE COMPANY
8
                    UNITED STATES DISTRICT COURT
9
                        DISTRICT OF NEVADA
10

11 | ROY INSCO, DONNA INSCO,              | CASE NO.
12 |                                      |
   |            Plaintiff,                | **DEFENDANTS' NOTICE OF REMOVAL**
13 |                                      | **PURSUANT TO 28 U.S.C. §§ 1332, 1441**
   |        v.                            |
14 |                                      | [District Court, Clark County Nevada Case
   | AETNA HEALTH & LIFE INSURANCE        | No. A583873-XXIII]
15 | COMPANY, AETNA HEALTH INSURANCE      |
   | COMPANY, AETNA LIFE INSURANCE        |
16 | COMPANY, DOES 1 through X, ROE       |
   | CORPORATIONS DOES 1 through X,       |
17 |                                      |
   |            Defendants.               |
18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF REMOVAL**

Defendants Aetna Health & Life Insurance Company, Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively "Aetna") hereby remove this civil action from the District Court of Clark County Nevada to the United States District Court for the District of Nevada, pursuant to 28 U.S.C. §§ 1441, 1446. Removal of this action is proper because no defendant is a citizen of Nevada, the amount in controversy is greater than $75,000, and this Court therefore has diversity jurisdiction under 28 U.S.C. § 1332. Furthermore, Plaintiffs' claims fall within the scope of remedies provided by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*("ERISA"); therefore, Plaintiffs' claims are completely preempted by ERISA and this Court also has federal question jurisdiction under 28 U.S.C. § 1331.

## I.    PROCEEDINGS TO DATE

Plaintiffs Roy and Donna Insco (collectively, "Plaintiffs") filed their Complaint in the District Court for Clark County Nevada on February 27, 2009. Plaintiffs did not serve Aetna with a copy of this Complaint. Plaintiffs then filed an Amended Complaint on May 8, 2009, a copy of which is attached hereto as Exhibit 1. Plaintiffs served a copy of the Amended Complaint on the Division of Insurance of the State of Nevada on June 11, 2009, and served their Complaint on Aetna on June 12, 2009. All documents filed served on Aetna in the state court action to date are included in Exhibit 1.

## II.    PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiff Roy Insco alleges he was "an insured of Defendants", and that he sought treatment at the Endoscopy Center of Southern Nevada ("the Clinic") because "it was Defendants' contracted provider." (First Amended Complaint ("FAC") ¶¶ 47-49.) Mr. Insco claims to have contracted Hepatitis C following treatment at the Clinic, and Plaintiffs seek damages from Aetna because of Aetna's "relationship with the Clinic." (FAC ¶ 61.) Plaintiffs argue that, as part of its administration of Plaintiffs' employee benefit plan, Aetna had an obligation to "adopt and implement a quality assurance program" (FAC ¶ 21) to ensure that any "contracted provider is using reasonable practices in the treatment of its insured/members" (FAC ¶ 19).

Plaintiffs assert four causes of action—for negligence, negligence per se, breach of the implied covenant of good faith and fair dealing/bad faith, and loss of consortium—grounded in the

1  allegations that Aetna either failed to implement or improperly administered a quality assurance

2  program.  (*See* FAC ¶¶ 56, 61-64.)

3         **III.    PLAINTIFFS' ERISA-GOVERNED HEALTH PLAN**

4         The plan through which Plaintiffs received healthcare coverage was offered by Ross Stores,

5  Inc. ("Ross") to its employees and their families.  (FAC ¶¶ 47, 69; Declaration of Laura Jackson

6  ("Jackson Decl.") ¶ 8, Exh. B.)  At all times relevant to this lawsuit, Plaintiff Donna Insco was

7  employed by Ross, and through her employment Plaintiffs Roy and Donna Insco enrolled in Ross's

8  health benefits plan.  (*See id.*)  Copies of documents describing the benefits available under Plaintiffs'

9  plan, referred to hereafter as the "Ross Employee Health Benefits Plan," are attached to the

10  Declaration of Laura Jackson, filed concurrently in support of this Notice.

11         The Ross Employee Health Benefits Plan is self-funded, meaning that Ross, Plaintiff Donna

12  Insco's employer, funds the plan and is financially responsible for all claims paid in connection with

13  covered services under the Ross Employee Health Benefits Plan.[1]  (*See* Jackson Decl., Exh. A.)

14         It cannot be disputed that the Ross Employee Health Benefits Plan is governed and controlled

15  by ERISA.  *See* 29 U.S.C. § 1002(1)(A).  Indeed, both the Summary Plan Description and the

16  Administrative Services Only Agreement expressly state that the plan is governed by ERISA, 29

17  U.S.C. § 1001, *et seq.*  (*See* Jackson Decl., Exhs. A, B.)

18         **IV.    GROUNDS FOR REMOVAL**

19  **A.    Diversity Jurisdiction**

20         This court has jurisdiction over this case because there is complete diversity between the

21  parties, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.

22         1. <u>Diversity of Citizenship</u>.  The parties are "citizens of different states." 28 U.S.C.

23  § 1332(a).  Two of the three defendants named in Plaintiffs' Complaint—Aetna Health & Life

24

25  ─────────────────────

26  [1]  The Administrative Services Only Agreement attached as Exhibit A to the Declaration of Laura
    Jackson is an agreement between Ross and Aetna Life Insurance Company, an Aetna entity,
27  concerning how the Ross Employee Health Benefits Plan (and any other health benefit plans
    funded by Ross) were to be administered.  The Summary Plan Description for the Ross Employee
28  Health Benefits Plan attached as Exhibit B to the Declaration of Laura Jackson is a summary of
    benefits available under the plan.

Insurance Company and Aetna Life Insurance Company—are incorporated in Connecticut, with their principal places of business also in Connecticut. (Jackson Decl. ¶ 2.)  The third defendant—Aetna Health Insurance Company—is incorporated in Pennsylvania, and has its principal place of business in Pennsylvania. (Jackson Decl. ¶ 3.)  Thus, for purposes of Section 1332, Aetna Health & Life Insurance Company and Aetna Life Insurance Company are citizens and residents of Connecticut, and Aetna Health Insurance Company is a citizen and resident of Pennsylvania. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").  At no time have any of the defendants ever been citizens or residents of Nevada. (Jackson Decl. ¶ 4.)

Plaintiffs allege in their Complaint that they are "citizens of the State of Nevada." (FAC ¶¶ 1-2.)  Therefore, complete diversity exists between the Plaintiffs and Defendants.  28 U.S.C. § 1332(a).

2. <u>Amount in Controversy.</u>  Plaintiffs' claims place well in excess of $75,000 in controversy, and therefore satisfy the amount-in-controversy requirement for this Court to exercise diversity jurisdiction.

Indeed, counsel for Plaintiffs have stipulated that the amount in controversy in this matter exceeds $75,000. (Doren Decl. ¶ 2.)  Therefore, there is no dispute that the amount in controversy requirement for federal jurisdiction has been met.

Additionally, it is plain from the face of the Complaint that the amount in controversy in this matter exceeds $75,000.  Specifically, although Plaintiffs failed to plead a precise amount of monetary relief sought through their Complaint—and indeed were prohibited from doing so by the Nevada Rules of Civil Procedure[2]—they seek to exempt their lawsuit from arbitration pursuant to Nevada Revised Statute Section 38.250.  According to Nevada Revised Statute 38.250, a case is compelled to arbitration if the "amount in issue does not exceed $50,000 per plaintiff, exclusive of attorney's fees, interest and court costs."  To avoid this mandatory arbitration, Plaintiffs state on the

---

[2] The Nevada Rules of Civil Procedure prohibit parties from specifying the amount in controversy in a pleading if the amount in controversy exceeds $10,000.  *See* Nev. R. Civ. Proc. 8 ("Where a claimant seeks damages of more than $10,000, the demand shall be for damages 'in excess of $10,000' without further specification of amount.").

1    face of the Complaint that the action is "exempt from arbitration—amount in excess of $50,000."

2    Plaintiffs thus concede—and in fact contend—that each Plaintiff individually seeks in excess of

3    $50,000 through this lawsuit.

4          With the base amount of damages already alleged to be in excess of $50,000, the additional

5    relief sought through the Complaint makes clear that Plaintiffs each seek more than $75,000 in

6    damages.[3] The "amount in excess of $50,000" each Plaintiff must seek to avoid arbitration is to be

7    assessed "*exclusive* of attorney's fees, interest and court costs." *See* NRS 38.250. But Plaintiffs have

8    prayed for attorneys fees (and costs) in addition to their alleged damages "in excess of $50,000."

9    (*See* FAC, Prayer for Relief ¶¶ 1-5.) Unless this case is tried and a final judgment issued in a matter

10    of weeks,[4] and with little or no discovery, Plaintiffs will incur substantially more than $25,000 in fees

11    and costs. When this amount is added to the damage claim, which it must be in evaluating the

12    amount in controversy under Section 1332, the $75,000 jurisdictional requirement is easily exceeded.

13          Additionally, Plaintiffs also seek punitive damages. Ninth Circuit precedent provides that it is

14    appropriate to consider a 1-to-1 ratio of compensatory damages to punitive damages in assessing the

15    amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007).

16    Because each Plaintiff seeks in excess of $50,000 in compensatory damages, an equal amount in

17    punitive damages brings the total amount in controversy for each Plaintiff to an amount in excess of

18    $100,000.

19    **B.**    **Federal Question Jurisdiction**

20          In addition to diversity jurisdiction, this Court also has federal question jurisdiction under

21    28 U.S.C. § 1331, because Plaintiffs' claims are completely preempted under Section 502(a) of

22    ERISA, 29 U.S.C. § 1132(a). As the Supreme Court of the United States repeatedly has held, the

23    _____

24    [3] If the claims of one plaintiff meet the jurisdictional amount of $75,000, the Court may exercise
supplemental jurisdiction if it finds that the other Plaintiff does not meet the jurisdictional

25    amount. *See, e.g., Exxon Mobile Corp. v. Allapattah Svc's, Inc.*, 545 U.S. 546, 558 (2005)
("[Section] 1367(a) confers supplemental jurisdiction over all claims, including those that do not

26    independently satisfy the amount-in-controversy requirement, if the claims are part of the same
Article III case or controversy.").

27

28    [4] Assuming plaintiffs' counsel charges $250 or more, they would exhaust this $25,000 amount in
only 100 hours or less.

DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441

1   "carefully integrated civil enforcement provisions" in Section 502(a) of ERISA are "exclusive," *Pilot*

2   *Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), and "any state-law cause of action that duplicates,

3   supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional

4   intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v.*

5   *Davila,* 542 U.S. 200, 209 (2004).

6          On its face, Plaintiffs' Complaint purports to seek relief solely based on state-law claims of

7   "negligence," "negligence *per se*," and "breach of the implied covenant of good faith and fair

8   dealing." But the preemption inquiry does not end there: the preemptive force of ERISA is so strong

9   that it operates as an exception to the well-pleaded complaint rule whereby the Court must look

10  beyond the pleadings to, among other things, "the various plan documents" to determine whether

11  Plaintiffs' claims "fall within the scope" of Section 502(a). *Davila*, 542 U.S. at 211; *see also*

12  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) (preemptive force of ERISA operates

13  to "convert[]" ordinary state law claims into federal claims for purposes of the well-pleaded

14  complaint rule).

15         In this case, as in *Davila*, "the only relationship that Aetna had with [Plaintiffs] was its partial

16  administration of [Plaintiffs'] employer's benefit plan." 542 U.S. at 211; *see also Cleghorn v. Blue*

17  *Shield of California*, 408 F.3d 1222, 1226 (9th Cir. 2005) (holding that state law claims were

18  preempted by section 502 of ERISA because Blue Shield's liability "would exist here only because of

19  [its] administration of ERISA-regulated benefit plans"). Plaintiffs do not allege that Aetna employed

20  their treating physicians or that Aetna is vicariously liable for the treatment that allegedly led to

21  Plaintiffs' injuries.

22         Rather, Plaintiffs allege that Aetna breached its duty to "evaluate, audit, monitor and

23  supervise its contracted provider to ensure that the contracted provider is using reasonable practices

24  in the treatment of its insured/member." (FAC ¶ 18.) According to Plaintiffs, a duty to supervise

25  treatment rendered by network physicians arose from an "implied covenant of good faith and fair

26  dealing" contained in Plaintiffs' "insurance contract"—*i.e.*, the Ross Employee Health Benefits Plan.

27  As an ERISA plan, the terms of the Ross Employee Health Benefits Plan may be enforced solely

28  through the exclusive civil enforcement provisions contained in Section 502(a), and thus it could not

be clearer that Plaintiffs' "implied covenant" claim is preempted. *See Cleghorn*, 408 F.3d at 1226; *see also Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1005 (9th Cir. 1998) (holding that state law claims including breach of the duty of good faith and fair dealing were preempted by section 514 of ERISA because they were "based on an interference with an attainment of benefits," noting that "the key issue is whether the parties' relationships are ERISA-governed relationships").  Further, by seeking relief under an implied term of their "insurance contract," Plaintiffs acknowledge that what they seek through all of their claims is in essence a ***benefit***—oversight by the Claims Administrator of medical treatment rendered by network providers—that they allegedly did not receive.  Such claims are preempted. *See Davila*, 542, U.S. 211-12.[5]

Whether any duty to supervise network physicians exists as Plaintiffs contend—and, if so, its scope and application—also would need to take into account the express terms of the Ross Employee Health Benefits Plan.  The Ross Employee Health Benefits Plan specifically addresses a member's right to sue Aetna based on "delivery of health care" under the plan:

> **Network Health Care Providers are Independent Contractors**
>
> All health care providers participating in the networks are independent contractors and should not be considered agents or employees of Ross or Aetna.
>
> Neither Ross nor Aetna is responsible for the delivery of health care offered under the program nor the efficiency or integrity of health care providers in delivering such health care services and supplies.  Neither Ross nor Aetna is liable for the consequences associated with the delivery of health care, services or supplies being limited or excluded under the terms of this program or any limitation imposed on the cost of this program.

---

[5] In addition to seeking relief under their "insurance contract," Plaintiffs also cite several Nevada statutory provisions as other potential sources for a duty to supervise in their claim of "negligence *per se*."  The Nevada statutory provisions do not apply to the Ross Employee Health Benefits Plan, however, because it is a self-funded plan subject to ERISA, not a "managed care organization" or "health maintenance organization."  In addition, even if these statutes were to apply, it would not change any of the reasons why Plaintiffs' claims are preempted. *See Davila*, 542 U.S. 200 (holding that negligence claim brought under Texas statute was preempted because it challenged denial of benefits which involved administration of the plan).

DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441

(Jackson Decl., Exh. B at 42 (emphasis added).)[6]  This plan provision and its impact on Plaintiffs' claims arising from the "delivery of health care offered under the program" underscore precisely why Plaintiffs' claims must be brought, if at all, under Section 502(a). *See Davila*, 542 U.S. at 213 (rejecting argument that legal duty of care under Texas statute arose independently of the ERISA plan, because "interpretation of the terms of respondents' benefits plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans").

Moreover, regardless of the legal theory on which Plaintiffs seek to rely, their claims unquestionably challenge Aetna's "administration" of the Ross Plan, and such claims are preempted. *Davila*, 542, U.S. 211.  As the Ninth Circuit has recognized, entering into network participation agreements and maintaining provider networks are core functions of plan administration, and state-law claims challenging those activities are preempted by ERISA. *See Bui v. American Telephone & Telegraph Co. Inc.*, 310 F.3d 1143, 1148 (9th Cir. 2002) (holding that "ERISA [Section 514(a)] preempts suits predicated on administrative decisions," including claims against ERISA plan administrators for contracting with an emergency service provider that allegedly rendered negligent services and caused a patient's death); *see also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3rd Cir. 2001) (affirming denial of remand motion and holding that a claim that an HMO "failed properly to hire, train, and supervise its employees 'to make thoughtful and reasonable decisions as to healthcare'" was preempted, because even though it was "ostensibly directed at the provision of medical treatment," there was no allegation that the HMO rendered medical treatment and therefore the claim "necessarily concerns the administration of [plaintiff's] benefits").  Here, the Ross

---

[6]  In addition, the Administrate Services Contract between Aetna and Ross Stores states that

Customer and Aetna agree that Aetna does not render medical services to Members, that neither is responsible for the provision of health care by health care providers, that health care providers are not the agents of either, and that in no event shall the indemnification obligations under (A) or (B) above apply to that portion of any loss, liability, damage, expense, settlement, cost, or obligation caused by the acts or omissions of health care providers with respect to Members.

(Jackson Decl., Exh. A at 9-10).

Employee Health Benefits Plan is no different: Aetna provides "Network Access Services" under its

Administrative Services Contract with Ross Stores. (*See* Jackson Decl., Exh. A at 16.)[7]

Plaintiffs' claims challenging Aetna's administration of the Ross Plan therefore are preempted

under Section 502 of ERISA and provide an additional basis for federal jurisdiction.

## V.   SUPPLEMENTAL JURISDICTION

Each Plaintiff has put at issue in this lawsuit at least $75,000 in controversy. However, if this

Court were to believe that one of the Plaintiffs had claimed less than $75,000 in controversy, this

Court could exercise supplemental jurisdiction over the remaining plaintiff under 28 U.S.C. § 1367.

Each of Plaintiffs' three counts in the Complaint is completely preempted by ERISA, as

described above. If this Court were to find that any claim asserted by Plaintiffs is not preempted,

however, the removal still would be proper based on the preemption of Plaintiffs' other claims, and

this Court would have supplemental jurisdiction over any non-preempted claims under 28 U.S.C.

§§ 1367 and 1441(c).

## VI.   VENUE

Plaintiffs filed their complaint in the District Court for Clark County, Nevada, which is within

this judicial district and division. *See* 28 U.S.C. § 108. This Court is thus the proper court for removal

under 28 U.S.C. §§ 1441(a), 1446(a).

## VII.   TIMELINESS

Because Aetna was served with the Complaint on June 12, 2009, this Notice of Removal is

timely filed. *See* 28 U.S.C. § 1446(b) ("notice of removal. . . shall be filed within thirty days after the

receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon

which such action or proceeding is based").

---

[7] In *Sadler v. Health Plan of Nevada*, Case No.: 2:08-cv-00466-RLH-LRL (D. Nev.), Chief Judge Hunt held that negligence claims asserted by plan members against an HMO were not preempted by ERISA and remanded the case back to state court. Unlike this case, *Sadler* did not involve a claim brought under an implied covenant in the ERISA plan. *Sadler* also involved a fully-insured state HMO that, unlike the Ross Plan, was subject to the Nevada state HMO Act. ERISA plan provisions like those described above also were not at issue in *Sadler*. If federal jurisdiction is contested in a motion to remand, if this Court requests additional briefing on the ERISA preemption issues, or at any other appropriate time, Aetna will explain in greater detail why the *Sadler* decision should not be followed in this case.

DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441

1                 **VIII.   RELATED CASES**

2         Aetna is not aware of any related case currently pending before this Court.

3                   **IX.    NOTICE**

4         As required by 28 U.S.C. § 1446(d), Aetna will give written notice of this notice of removal to

5  Plaintiffs and will file a copy of it with the clerk of the state court.

6                 **X.     CONCLUSION**

7         For the foregoing reasons, Aetna respectfully states that this action, previously pending in the

8  District Court for Clark County Nevada is properly removed to this Court, and Aetna respectfully

9  requests that this Court proceed as if this case had been originally initiated in this Court.

10

11  DATED: July 10, 2009

12                               JOHN H. COTTON & ASSOCIATES, LTD.
                                  John H. Cotton

13                                   Christopher G. Rigler

14

15                            By: _____
                                      John H. Cotton

16

17                             Attorneys for Defendants,
                            AETNA HEALTH & LIFE INSURANCE COMPANY,

18                             AETNA HEALTH INSURANCE COMPANY, AETNA
                            LIFE INSURANCE COMPANY

 100685526_3 (2).DOC

19

20

21

22

23

24

25

26

27

28

Exhibit 1



**CT Corporation**

**Service of Process Transmittal**
06/16/2009
CT Log Number 515008798

TO:    Myrna Goodrich, U13N, Paralegal
       Aetna, Inc.
       980 Jolly Road
       Blue Bell, PA 19422-1904

Walnut Creek Law Dept.
JUN 18 2009

*6/17/09—*
*Laura Jackson*
*CT 2009000542*

RE:    **Process Served in Nevada**

FOR:   Aetna Health Insurance Company (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Roy Insco, et al., Pltfs. vs. Aetna Health & Life Insurance Company, et al., including Aetna Health Insurance Company, Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Proof of Service, Summons, Affidavit of Service form, Complaint, Demand For Jury Trial, Attachment |
| **COURT/AGENCY:** | District Court, Clark County, Nevada, Clark, NV<br>Case # A583873 |
| **NATURE OF ACTION:** | Medical Injury - Improper Care and Treatment - Seeks damages in excess of $10,000 regarding treatment received on or about June 13, 2007 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company of Nevada, Reno, NV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/15/2009 postmarked on 06/12/2009 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days, exclusive of day of service |
| **ATTORNEY(S) / SENDER(S):** | Gillock Markley & Killebrew, PC<br>428 South Fourth Street<br>Las Vegas, NV 89101<br>702-385-1482 |
| **REMARKS:** | Process served/received by Commissioner of Insurance and forwarded to CT Corporation System on June 11, 2009 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 791230511437<br>Image SOP |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company of Nevada<br>6100 Neil Road<br>Suite 500<br>Reno, NV 89511 |
| **TELEPHONE:** | 775-688-3061 |

Page 1 of 1 / FM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

JIM GIBBONS
*Governor*

DIANNE CORNWALL
*Director*

**STATE OF NEVADA**



SCOTT J. KIPPER
*Commissioner of Insurance*

PAMELA A. MACKAY
*Deputy Commissioner*

**DEPARTMENT OF BUSINESS AND INDUSTRY**

**DIVISION OF INSURANCE**

June 12, 2009

**2501 E. Sahara Avenue, No. 302**
**Las Vegas, Nevada   89104**
**(702) 486-4009   •   Fax (702) 486-4007**
**E-mail: insinfo@doi.state.nv.us**

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
# 7008 1830 0003 5449 0237

AETNA HEALTH INSURANCE COMPANY
C/O CORPORATION TRUST COMPANY OF NEVADA
SUITE 500
6100 NEIL ROAD
RENO, NV 89511

Re:   Case No.   **A583873**
      Case Name:   **Insco v. Aetna Health & Life Ins Co.**

Dear Agent:

The enclosed Summons and First Amended Complaint and Demand for Jury in the matter referenced above, were delivered to the office of the Commissioner of Insurance, on June 11, 2009, in accordance with NRS 680A.260. To complete service of process, we are forthwith mailing by certified mail one of the copies of such process to you, the person designated by the insurer to receive such.

Also enclosed herein is a true and correct copy of the Proof of Service in this matter dated June 12, 2009, and a copy of our letter to Plaintiff's counsel, dated June 12, 2009.

You have 30 days from the date of this service to respond.

If you have any questions regarding this service, please do not hesitate to contact us.

Cordially yours,
SCOTT J. KIPPER
Commissioner of Insurance

Marilyn Brasfield
Service of Process Clerk
Telephone:  702.486.4060
Email: mbrasfield@doi.state.nv.us
Enclosures

(NSPO Rev. 1-09)

L 235

**PROOF OF SERVICE**

I hereby declare that on this day I served a copy of the Summons and First Amended Complaint and Demand for Jury upon defendant **AETNA HEALTH INSURANCE COMPANY** in the within entitled matter, by mailing a copy thereof, properly addressed with postage prepaid, certified mail, return receipt requested, to the following:

> **C/O CORPORATION TRUST COMPANY OF NEVADA**
> **SUITE 500**
> **6100 NEIL ROAD**
> **RENO, NV  89511**

I declare, under penalty of perjury, that the foregoing is true and correct.

**DATED** this 12th day of June, 2009.

MARILYN BRASFIELD
Employee of the State of Nevada
Department of Business and Industry
Division of Insurance

Court: Eighth Judicial District Court, Clark County, Nevada
Case Name:  Insco v. Aetna Health & Life Ins Co.
Case No. A583873
Certified Receipt No. 7008 1830 0003 5449 0237

State of Nevada, Division of Insurance
This document on which this certificate
is stamped is a full, true and correct
copy of the original.

Date: 06'12'09 By:

-1-

*JIM GIBBONS*
*Governor*

**STATE OF NEVADA**

SCOTT J. KIPPER
*Commissioner of Insurance*

DIANNE CORNWALL
*Director*



PAMELA A. MACKAY
*Deputy Commissioner*

## DEPARTMENT OF BUSINESS AND INDUSTRY
## DIVISION OF INSURANCE
**2501 E. Sahara Avenue, No. 302**
June 12, 2009
**Las Vegas, Nevada   89104**
**(702) 486-4009  •  Fax (702) 486-4007**
**E-mail: insinfo@doi.state.nv.us**

NIA C. KILLEBREW, ESQ.
GILLOCK MARKLEY & KILLEBREW, PC
428 SOUTH FOURTH STREET
LAS VEGAS, NV  89101

Re:    Case No.      **A583873**
         Case Name:   **Insco v. Aetna Health & Life Ins Co.**

Dear Ms. Killebrew:

On June 11, 2009, the Summons and First Amended Complaint and Demand for Jury in the matter referenced above were delivered to the office of the Commissioner of Insurance.

To complete service of process, we have forthwith mailed by certified mail one copy of such documents in the matter referenced above to the entity currently designated by the insurer to receive such process.  We are forwarding to you by first class mail the following:

1.      A receipt in the amount of $30.00.
2.      A copy of our letter to the insurance company, dated June 12, 2009.
3.      The original Proof of Service, dated June 12, 2009, and served upon **AETNA HEALTH INSURANCE COMPANY.**

Please be aware that all documents after initial Service of Process may be served directly to the party.  See NRS 680A.260, 685A.200 and 685B.050.

If you have any questions regarding this service, please contact us.

Cordially yours,
SCOTT J. KIPPER
Commissioner of Insurance

Marilyn Brasfield
Service of Process Clerk
Telephone:  702.486.4060
Email: mbrasfield@doi.state.nv.us
Enclosures

**DISTRICT COURT**

**CLARK COUNTY NEVADA**

\*\*\*\*\*

| | | | |
|---|---|---|---|
| ROY INSCO, DONNA INSCO, | ) | CASE NO. | A583873 |
| | ) | DEPT NO. | XXII |
| Plaintiff(s), | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| AETNA HEALTH & LIFE INSURANCE | ) | **FIRST AMENDED SUMMONS** | |
| COMPANY, AETNA HEALTH INSURANCE | ) | | |
| COMPANY, AETNA LIFE INSURANCE | ) | | |
| COMPANY, DOES I through X ROE | ) | | |
| CORPORATIONS DOES I though X, | ) | | |
| | ) | **EXEMPTION FROM** | |
| Defendants | ) | **ARBITRATION - AMOUNT** | |
| | ) | **IN EXCESS OF $50,000** | |
| | ) | | |

```
┌─────────────────────┐
│ R E C E I V E        │
│   JUN 1 1 2009       │
│ DIVISION OF INSURANCE│
│   STATE OF NEVADA    │
└─────────────────────┘
```

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT: AETNA HEALTH INSURANCE COMPANY**

A Civil Complaint has been filed by the Plaintiff against you for relief set forth in the Complaint

1.     If you intend to defend this lawsuit, within 20 days after this Summons is served to you, exclusive of the day of service, you must do the following:

a.     File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fees.

b.     Serve a copy of your response upon the attorney whose name and address is shown below.

2.     Unless you respond, your default will be entered upon application of the Plaintiff and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.     If you intend to seek the advise of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.     The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission member and legislators, each have 45 days after service of this summons within which to file an answer or other responsive pleading to the Complaint.

Issued at the request of:

Clerk of Court

_Nia Killebrew_

NIA KILLEBREW, ESQ.
Nevada Bar No. 004553
428 South Fourth Street
Las Vegas, Nevada 89101
Attorney for Plaintiffs

By:_____

**TONI AYALA**

Deputy Clerk

Date
Issued:_____

Clark County Courthouse
200 Lewis Avenue
Las Vegas, Nevada 89155

(DISTRICT COURT SEAL)

ACOMP
GERALD I. GILLOCK, ESQ.
Nevada Bar No. 000051
NIA C. KILLEBREW
Nevada Bar No. 004553
GILLOCK MARKLEY & KILLEBREW, PC
428 South Fourth Street
Las Vegas, Nevada 89101
(702) 385-1482

MATTHEW L. SHARP
Nevada Bar No. 4746
MATTHEW L. SHARP LTD.
419 Flint St.
Reno, Nevada 89509
(775)-324-1500
Attorneys for Plaintiff

FILED

2009 MAY -8  P 3: 53

RECEIVED

JUN 1 1 2009

DIVISION OF INSURANCE
STATE OF NEVADA

## DISTRICT COURT

## CLARK COUNTY NEVADA

*****

ROY INSCO, DONNA INSCO,                    )   CASE NO.   A583873
                                           )   DEPT NO.   XXII
                Plaintiff(s),              )
                                           )
vs.                                        )   **FIRST AMENDED COMPLAINT**
                                           )    **AND DEMAND FOR JURY**
AETNA HEALTH & LIFE INSURANCE              )
COMPANY, AETNA HEALTH INSURANCE            )
COMPANY, AETNA LIFE INSURANCE              )
COMPANY, DOES I through X ROE              )
CORPORATIONS DOES I though X,              )
                                           )   **EXEMPTION FROM**
                Defendants                 )   **ARBITRATION - AMOUNT**
                                           )   **IN EXCESS OF $50,000**
_____)

COMES NOW Plaintiffs Roy Insco and Donna Insco, by and through their attorneys,

complain and allege as follows:

I.

## PARTIES AND JURISDICTION

1.      Plaintiff Roy Insco is, and at all times relevant hereto was, a citizen of the State of

Nevada.

2.      Plaintiff Donna Insco is, and at all time relevant hereto was, a citizen of the State

of Nevada.

3.      Defendant Aetna Health & Life Insurance Company is a health insurer conducting business in the State of Nevada.

4.      Defendant Aetna Health Insurance Company is a health insurer conducting business in the State of Nevada.

5.      Defendant Aetna Life Insurance Company is a health insurer conducting business in the State of Nevada

6.      The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants, DOES I through X, inclusive, and Defendants, ROE CORPORATIONS I through X, inclusive, are unknown to Plaintiff(s), and are believed to be owners, operators, partners and/or managing agents of the named Defendants and Plaintiff's insurance plan and are responsible for developing and implementing the quality assurance program applicable to the care provided by the Clinic. Plaintiff sues said Defendants by such fictitious names but are believed to be agents, servants, and/or employees of Defendants. Plaintiff are informed and believe, and therefore allege, that each of the Defendants designated as a DOE and/or ROE CORPORATION are responsible in some manner for the events and happenings herein referred to, and caused injury and damages proximately thereby to Plaintiff, as herein alleged; that such DOE Defendants and ROE CORPORATIONS Defendants were the agents, servants, or employees of each other and, in doing the things herein alleged, each was acting within the scope and course of said agency, servitude and employment, with the knowledge, permission and consent of the other Defendants. Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said DOES I through X, inclusive and ROE CORPORATIONS I through X, inclusive, when the same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such Defendants in this action.

7.      At all times relevant herein, Defendants have been engaged in the joint venture of providing insurance, and they are jointly and severally liable. The Defendants have been the agents, servants, partners and employees of each and every other Defendant, and acting within the course and scope of their agency, partnership and employment and, to the extent permitted by law, are jointly and severally liable.

2

## II.

## GENERAL FACTUAL ALLEGATIONS

8.     Defendants are managed care organizations.

9.     Defendants engage in managing the medical care of its insured/members.

10.    Managed care is quality-driven health care and is intended to focus on improving and maintaining the health of the insured member.

11.    Defendants contract with certain medical providers to provide health care services to their insureds.  Those providers are commonly referred to as contracted providers.

12.    Under the terms of the contract with the Defendants, the contracted provider agrees to provide health care to insureds and members of the Defendants.

13.    Defendants agree to pay the contracted provider for the services provided to their insureds.

14.    Defendants agree to require and/or encourage their insureds to receive health care from the contracted providers

15.    The insured or member is one of the primary and intended beneficiaries of Defendants' contract with the contracted provider.

16.    The insured or member has a reasonable expectation Defendants will require that: (1) the contracted provider follow generally accepted clinical and medical practices; (2) the contracted provider engage in appropriate hygiene practices such that insureds are not exposed bloodborne pathogens like HCV; (3) the contracted provider will provide quality health care to the insured; and (4) the contracted provider will not engage in fraudulent or deceptive practices directed either at the Defendants or their insureds.

17.    Defendants have the right under the contract to evaluate, audit, monitor and supervise its contracted providers to ensured that contracted providers provide quality and reasonable health care to the Defendants' insured/members.

18.    Defendants can terminate its contract with any contracted provider who engages in unsafe, fraudulent, deceptive, or unreasonable business practices.

3

19.     To protect the interest of its insured. industry standards provides that Defendants will evaluate, audit, monitor and supervise its contracted provider to ensure that the contracted provider is using reasonable practices in the treatment of its insured/members.

20.     To protect the interest of the insured, Defendants had to adopt and implement a quality assurance program.

21.     Industry standards provide that Defendants adopt and implement a quality assurance program.

22.     Through quality assurance, Defendants must direct, evaluate, and monitor the effectiveness of health care services provided by the contracted provider.

23.     Defendants have contracted with the Endoscopy Center of Southern Nevada, the Gastroenterology Center of Nevada and the doctors employed or associated with the Gastroenterology Center of Nevada for the purpose of having their insureds receive medical care.[1]

24.     Since 2002, the Clinic specialized in treating patients who needed gastrointestinal procedures including endoscopic procedures.

25.     Since at least 2002 and within Clark County, Nevada, the Defendants encouraged their insureds to seek treatment from the Clinic.

26.     At all pertinent times, Defendants knew or should have known that the procedures performed by the Clinic involved the risk of transferring blood borne pathogens such as Hepatitis B, Hepatitis C and HIV.

27.     At all pertinent times, Defendants knew or should have known that the risk of transmission of blood borne pathogens such as Hepatitis B, Hepatitis C and HIV can be avoided if the Clinic simply followed standard safety protocols such as safe injection practices.

28.     At all pertinent times, Defendants knew or should have known that there is a high risk of transmission of blood borne pathogens such as Hepatitis B, Hepatitis C and HIV if the

---

[1]The Endoscopy Center of Southern Nevada I and II, the Gastroenterology Center of Nevada and the doctors are collectively referred to as the Clinic.

4

1   Clinic engaged in unsafe medical practices such as the reuse of syringes and/or medication vials.

2       29.     At all pertinent times, Defendants knew or should have known that the transfer of

3   blood borne pathogens such as Hepatitis B, Hepatitis C and HIV occur in the context of

4   outbreaks due to patient-to-patient transmission caused by unsafe injection practices such as the

5   reuse of syringes and/or medication vials.

6       30.     Defendants knew or should have known the Clinic had to engage in safe medical

7   practices to avoid the transfer of blood borne pathogens such as Hepatitis C, Hepatitis B and

8   HIV.

9       31.     Consequently, Defendants knew or should have known that if they did not

10  evaluate, audit, monitor and supervise the Clinic's practice, they could place their insureds at risk

11  to unsafe medical practices and the transfer of blood borne pathogens such as Hepatitis C,

12  Hepatitis B and HIV.

13      32.     During the period from at least 2004 through February 2008, the Clinic was

14  engaging in unsafe practices including: (1) reusing "single use" Propofol vials for multiple

15  patients and reusing syringes to re-enter Propofol vials; (2) reusing single use medical devices

16  and equipment, (3) reusing biopsy equipment labeled for use on a single patient on multiple

17  patient; (4) washing multiple endoscopy scopes in a detergent solution labeled for use on a

18  single-scope; and (5) reusing bite blocks (devices placed in the mouth during upper endoscopies)

19  on multiple patients, and in fact imposed a rule limiting staff to four (4) bite blocks per day per

20  procedure room, regardless of the number of procedures performed.

21      33.     Since at least 2004, the Clinic engaged in unethical business practices including:

22  (1) it maintained inadequate records to demonstrate that it used safe medical practices; (2) it

23  incorrectly recorded anesthesia time to make it appear anesthesia was given for longer periods of

24  time; and (3) it recorded procedures times on charts such that doctors were recorded as

25  performing procedures on separate patients at the same time.

26      34.     Defendants knew or should have known of the Clinic's practices described in

27  paragraphs 30 and 31.

28      35.     In their relationship with the Clinic, Defendants did not reasonably conduct

1  quality assurance including evaluate, audit, monitor and supervise the Clinic and its practice.

2     36.    Defendants did not terminate its relationship with the Clinic.

3     37.    Defendants did not take reasonable steps to stop the Clinic's practices or to warn
4  its insured/members of the practices.

5     38.    In January 2008, the Southern Nevada Health District, the agency tasked with
6  promoting the health, environment, and well-being of Southern Nevada residents and visitors,
7  received notice from local area physicians of several acute cases of Hepatitis C.

8     39.    Pursuant to Nevada law, medical providers must notify public health officials
9  when they identify patients with specified medical conditions, including but not limited to,
10  Hepatitis C.

11    40.    According to the Southern Nevada Health District, on average, two (2) cases of
12  acute Hepatitis C are identified each year in Clark County, Nevada.

13    41.    In response to the reported cases of acute Hepatitis C, the Southern Nevada Health
14  District, in conjunction with the Nevada State Bureau of Licensure and Certification and the
15  Clinics for Disease Control and Prevention ("CDC") commenced an investigation to determine,
16  among other things, if there was a common source linking these occurrences.

17    42.    The Southern Nevada Health District determined that the patients with acute
18  Hepatitis C had received treatment at the Clinic.

19    43.    Beginning January 9, 2008, the Southern Nevada Health District, with assistance
20  from the CDC, began an investigation of the Clinic. This investigation included meeting with
21  Clinic management, reviewing Endoscopy Clinic records and reviewing charts, observing clinic
22  operations and procedures at the Endoscopy Clinic, and interviewing current and former staff.

23    44.    During this investigation, the Southern Nevada Health district identified unsafe
24  practices which placed patients at risk for exposure to blood borne pathogens, and determined
25  that these unsafe practices had been the standard practices at the Endoscopy Clinic since at least
26  March 2004.

27    45.    Specifically, the Southern Nevada Health Department determined that the
28  Endoscopy Clinic:

6

  a. reused biopsy equipment labeled for use on a single patient on multiple patients, and in fact imposed a rule requiring single-use equipment to be used three times if possible;

  b. washed multiple endoscopy scopes in a detergent solution labeled for use on a single-scope;

  c. reused bite blocks (devices placed in the mouth during upper endoscopies) on multiple patients, and in fact imposed a rule limiting staff to four (4) bite blocks per day per procedure room, regardless of the number of procedures performed; and

  d. reused "single use" Propofol vials for multiple patients and reused syringes to re-enter Propofol vials.

46. The reuse of syringes combined with the re-use of "single use" Propofol vials for multiple patients in particular exposed Clinic patients, including Plaintiff to the blood and blood borne pathogens of other patients.

47. Plaintiff Roy Insco was an insured of Defendants.

48. Plaintiff received treatment from the Clinic on June 13, 2007.

49. Plaintiff received treatment from the Clinic because it was Defendants' contracted provider.

50. Plaintiff was exposed to unsafe practices as set forth above which resulted in Plaintiff contracting Hepatitis C, an infectious disease.

51. As a part of its investigation, the Southern Nevada Health District determined that Plaintiff contracted Hepatitis C as a result of treatment at the Clinic.

52. Plaintiff has been diagnosed with Hepatitis C and is also at risk for contraction of other blood borne pathogens all due to the conduct of the Defendants.

53. Plaintiff has and will continue to be damaged as a result of the Defendants' conduct including: (1) past and future medical expenses; (2) past and future economic losses; and (3) past and future pain and suffering, anguish, anxiety and distress.

### III.

### FIRST CAUSE OF ACTION
### (NEGLIGENCE)

54.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

55.     As specified herein, Defendants owed a duty to Plaintiff to exercise reasonable care.

56.     As specified herein, Defendants breached their duty to Plaintiff by failing to exercise reasonable care in its relationship with the Clinic.

57.     As a proximate and legal cause of Defendants' negligence, Plaintiff, as set forth herein, has sustained special and general damages as provided by law and in an amount in excess of $10,000.

58.     As a result of Defendants' actions, Plaintiff has been required to seek the services of an attorney and therefore seeks reimbursement of attorneys' fees and costs.

59.     Defendants have acted with fraud, malice and oppression. Plaintiff, therefore, seeks punitive damages by way of punishment and deterrence in an amount to be determined at trial.

### IV.

### SECOND CAUSE OF ACTION
### (NEGLIGENCE PER SE)

60.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

61.     Concerning their relationship with the Clinic, Defendants violated NRS 695G.130, NRS 695G.160, NRS 695G.180, NRS 695G.190, NAC 695.200, NAC 695C.400, and NAC 695C.210.

62      Plaintiff is within the class of persons intended to be protected by NRS 695G.130, NRS 695G.160, NRS 695G.180, NRS 695G.190, NAC 695.200, NAC 695C.400, and NAC 695C.210.

63.     The injury Plaintiff has sustained is the type that was intended to be prevented by

8

1   NRS 695G.130, NRS 695G.160, NRS 695G.180, NRS 695G.190, NAC 695.200, NAC

2   695C.400, and NAC 695C.210.

3       64.    As a proximate and legal cause of Defendants' negligence, Plaintiff, as set forth

4   herein, has sustained special and general damages as provided by law and in an amount in excess

5   of $10,000.

6       65.    As a result of Defendants' actions, Plaintiff has been required to seek the services

7   of an attorney and therefore seeks reimbursement of attorneys' fees and costs.

8       66.    Defendants have acted with fraud, malice, and oppression.  Plaintiff, therefore,

9   seeks punitive damages by way of punishment and deterrence in an amount to be determined at

10   trial.

11           **V.**

12   **THIRD CAUSE OF ACTION**
    **(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR**

13   **DEALING/BAD FAITH)**

14       67.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as

15   though fully set forth herein.

16       68.    An insurance contract existed between Defendants and Plaintiff.

17       69.    There is an implied covenant of good faith and fair dealing in the insurance

18   contract that Defendants will not do anything to injure the rights of its insureds including

19   Plaintiff.

20       70.    As specified herein, Defendants have breached their duty of good faith and fair

21   dealing by engaging in unreasonable conduct with knowledge of there being no reasonable basis

22   for its conduct.

23       71.    As a proximate and legal cause of Defendants' negligence, Plaintiff, as set forth

24   herein, has sustained special and general damages as provided by law and in an amount in excess

25   of $10,000.

26       72.    As a result of Defendants' actions, Plaintiff has been required to seek the services

27   of an attorney and therefore seeks reimbursement of attorneys' fees and costs.

28       73.    Defendants have acted with fraud, malice, and oppression.  Plaintiff, therefore,

seeks punitive damages by way of punishment and deterrence in an amount to be determined at trial.

## VI.

## LOSS OF CONSORTIUM
### (As to all Defendants)

74.     Plaintiffs hereby adopt and incorporate by reference all prior paragraphs as though fully set forth herein.

75.     The Plaintiff Donna Insco is the spouse of Roy Insco and has been his spouse at all times relevant to this Complaint.

76.     As a direct and proximate result of each of the Defendants' negligence, Donna Insco has suffered loss of consortium and consequent severe emotional distress in an amount in excess of ten thousand dollars ($10,000).

77.     As a further direct and proximate result of Defendants' negligence, Donna Insco has had to retain the services of attorneys and therefore seeks reimbursement of attorneys' fees and costs.

## V.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendants, and each of them, as follows:

1.      For general damages in excess of $10,000.00;

2.      For special damages in excess of $10,000.00;

3.      For punitive damages in an amount to be determined at trial;

4.      For reasonable attorneys' fees and costs;

5.      For pre- and post-judgment interest as provided by law;

6.      For costs of suit; and

7.      For any such further relief this Court deems appropriate.

10

# VIII.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a trial by jury on all issues so triable.

DATED this $\underline{8}^{th}$ day of May, 2009.

GILLOCK MARKLEY & KILLEBREW, PC


BY: _Nia Killebrew_
GERALD I. GILLOCK, ESQ.
Nevada Bar No. 000051
NIA C. KILLEBREW, ESQ.
Nevada Bar No. 004553
GILLOCK MARKLEY & KILLEBREW, PC
428 South Fourth Street
Las Vegas, Nevada 89101
(702) 385-1482
Attorneys for Plaintiff

11

GILLOCK, MARKLEY
& KILLEBREW
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

428 SOUTH 4TH STREET
LAS VEGAS, NEVADA 89101

HAND DELIVERY
State of Nevada Division of Insurance
Attn: Marilyn Brasfield
2501 E. Sahara, Suite 302
Las Vegas, NV 89104



AETNA HEALTH INSURANCE COMPANY
C/O CORPORATION TRUST COMPANY OF NEVADA
SUITE 500
6100 NEIL ROAD
RENO, NV 89511

7008 1830 0003 5449 0237

US POSTAGE
Mailed From 89101
06/12/2009
$ 06.490

Hasler

016H265095668